IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COAST TO COAST HEALTH
CARE SERVICES, INC.,

    Plaintiff,                      Case No. 2:10-cv-734

v.                              JUDGE SARGUS

                                    MAGISTRATE JUDGE ABEL

DAWN MEYERHOFFER, et al.,

    Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of the motion of Defendants David Lovell, Critical Access Solutions, LLC, Daybreak Village, LLC, and Tapestry Hospice, LLC to dismiss for lack of personal jurisdiction, or, in the alternative, to change venue (Doc. 16); Plaintiff Coast to Coast Health Care Services, Inc.'s motion for default judgment against Defendant Dawn Meyerhoffer (Doc. 19); and Meyerhoffer's motion for leave to file a responsive pleading instanter (Doc. 21). For the reasons stated herein, the motion to dismiss for lack of personal jurisdiction is **DENIED**, Plaintiff's motion for default judgment is **DENIED**, Meyerhoffer's motion for leave to respond to the amended complaint is **GRANTED**, and Defendants' motion to transfer venue to the Northern District of Georgia is **HELD in ABEYANCE**.

### I.

Plaintiff Coast to Coast Health Care Services, Inc. ("Coast to Coast") brings the instant action against Defendants David Lovell ("Lovell"), Critical Access Solutions, LLC ("CAS"), Daybreak Village, LLC ("Daybreak"), Tapestry Hospice, LLC ("Tapestry"), and Dawn Meyerhoffer ("Meyerhoffer") with claims for violations of the Ohio Trade Secrets Act,

conversion, unfair competition, breach of fiduciary duty, tortious interference with business relations, unjust enrichment, accounting, constructive trust, violations of the Federal Computer Fraud and Abuse Act, and civil conspiracy. Coast to Coast is an Ohio corporation with its principal place of business in New Albany, Ohio. (Am. Compl. ¶ 2.) Coast to Coast began doing business in 2007 and "specializes in providing high quality, experienced physician staffing for critical access hospitals, as well as offering a broad range of consulting services to critical access hospitals." (Am. Compl. ¶¶ 2 & 15.) Coast to Coast alleges that Meyerhoffer, who resides in Utah, and Lovell, who resides in Georgia, are former key employees who have established CAS as a competing business, and, in so doing, have committed the various tortious and illegal acts alleged in the amended complaint. CAS, Daybreak, and Tapestry are all Georgia limited liability companies. (Am. Compl. ¶¶ 5–7.) Lovell is the treasurer of Daybreak, an assisted living facility, and the chief executive officer of Tapestry, a hospice care provider. (Lovell Aff. ¶¶ 4–7.) Coast to Coast alleges that Lovell and Meyerhoffer have used the resources of Daybreak and Tapestry to staff and operate CAS, thus aiding their tortious conduct. (*See* Am. Compl. ¶ 60.)

Lovell, CAS, Daybreak, and Tapestry have each moved for dismissal based on a lack of personal jurisdiction, or, in the alternative, for a change of venue. Coast to Coast has moved for entry of a default judgment against Meyerhoffer, who failed to timely file a responsive pleading or motion. Meyerhoffer has appeared, and requests that the motion for default judgment be denied and for leave to respond. The Court will first consider the motion to dismiss of Lovell, CAS, Daybreak, and Tapestry.

II.

A.

Lovell, CAS, Daybreak, and Tapestry contend that, pursuant to Rule 12(b)(2), the Court lacks personal jurisdiction over them. A court may have either specific or general jurisdiction over a defendant. Specific jurisdiction is present "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). General jurisdiction, on the other hand, is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 415 n.9; *see also Burger King*, 471 U.S. at 473. To decide whether specific personal jurisdiction exists, the Court considers two factors: (1) whether Ohio's long-arm statute "authorize[s] the exercise of jurisdiction over [the] Defendants"; and (2) whether the "exercise of that jurisdiction comports with constitutional due process." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

The Sixth Circuit has established the following three-part analysis for evaluating due process in the context of specific personal jurisdiction challenges:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). *See also Air Prods.*, 503 F.3d at 550; *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). "[P]urposeful

3

availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (internal quotations and citation omitted). Personal jurisdiction is proper when purposeful availment has occurred because the defendant "manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. "If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music*, 327 F.3d at 479.

The plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). In deciding whether personal jurisdiction over a defendant exists, it is within the Court's discretion to hold a hearing or rely on affidavits and the factual allegations of the pleadings without holding a hearing. *Mich. Nat'l Bank*, 888 F.2d at 466. If the Court chooses not to hold a hearing, it must construe the record before it in a light most favorable to the plaintiff. *Id.* Here, neither Coast to Coast nor Defendants have requested a hearing, and the Court is satisfied that the record before it, along with the allegations of the amended complaint, are sufficient to render a decision. However, a determination at this stage that personal jurisdiction exists over some or

4

all Defendants does not relieve Coast to Coast of its obligation to prove the facts supporting jurisdiction at trial. *Id.*

### B.

The Court will consider the question of personal jurisdiction over each of the movant-Defendants in turn, and concludes that personal jurisdiction exists over Lovell, CAS, Daybreak, and Tapestry.

### 1. Lovell

The amended complaint alleges that, despite residing in Georgia, Lovell served as Coast to Coast's Chief Operating Officer, with duties including "management and administration" of Coast to Coast's business affairs. (Am. Compl. ¶ 12.) According to Coast to Coast, as part of those duties:

> Lovell instituted and monitored web-based client feedback; directed public relations efforts; participated in sales presentations; negotiated contracts with current and prospective clients; updated client contracts; recruited and retained independent contractor physician providers; held himself out as Plaintiff's representative at trade shows and conventions; visited current and prospective clients; and followed up on prospective client leads. As part of his contact with current and prospective clients, Lovell traveled to these locations.

(Am. Compl. ¶ 12.) Lovell allegedly resigned his position on May 20, 2010. (Am. Compl. ¶ 1.)

Coast to Coast has submitted an affidavit of its president, Dr. Mark J. Bolton ("Bolton"), in support of its opposition to Defendants' motion. In the affidavit, Bolton avers, *inter alia*, that 1) Lovell was Coast to Coast's chief operating officer and actively held himself out as such; 2) Lovell loaned Coast to Coast $75,000 to help start the company's operations; 3) Lovell travelled to Ohio numerous times in connection with his employment with Coast to Coast; 4) Lovell actively transacted business on behalf of Coast to Coast; and 5) on at least one occasion, Lovell, while on a business trip funded by Coast to Coast, secretly negotiated on behalf of CAS and

5

discouraged a prospective client of Coast to Coast from signing a contract with Coast to Coast. (*See* Bolton Aff. ¶¶ 4–9, 12.) Bolton further avers that clients of Coast to Coast contract with the company in Ohio and that part of Lovell's responsibilities was to monitor performance under the various contracts. (*See* Bolton Aff. ¶¶ 3 & 10.) Lovell has also submitted an affidavit in support of his motion for dismissal, but has not contested the accuracy of Bolton's statements concerning Lovell's role with Coast to Coast. Lovell's motion for dismissal contains unsupported statements that Lovell never did business in Ohio and never had an employment contract with Coast to Coast. (*See* Doc. 16 at 3, 6.) However, even if the Court were to accept these unsupported statements as facts, factual disputes must be resolved in favor of Coast to Coast for purposes of deciding Defendants' jurisdictional challenge.

In construing the record in favor of Coast to Coast, the Court concludes that it has specific personal jurisdiction over Lovell. Turning first to Ohio's long arm statute, Ohio courts are deemed to have personal jurisdiction over a person "as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in" Ohio or from the person's "[c]ausing tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." OHIO REV. CODE § 2307.382(A)(3) & (6). The amended complaint sufficiently alleges that Lovell committed tortious acts within Ohio and acts outside Ohio that caused injury within the state. Thus, the requirements of Ohio's long arm statute are satisfied.

Additionally, the requirements of due process would not be offended by the Court's exercise of personal jurisdiction over Lovell. The record reflects that Lovell worked as a high-ranking employee and officer of a corporation organized under the laws of Ohio, with its principal place of business in Ohio. Coast to Coast transacted business in Ohio and under the

6

protection of Ohio law. Despite the fact that he resided in Georgia, Lovell made frequent trips to Ohio in connection with his employment with Coast to Coast. Thus, Lovell purposefully availed himself of the privilege of conducting business in Ohio. Further, Coast to Coast's causes of action against Lovell arise from his activities in Ohio as these activities consisted of his employment relationship with Coast to Coast and his transaction of business under the protection of Ohio law on behalf of Coast to Coast. Finally, exercise of personal jurisdiction over Lovell in Ohio is reasonable given the significant position he held with an Ohio corporation and his contacts with the state, through both travel to Ohio and in generally conducting business on behalf of the corporation. In other words, based on his position with Coast to Coast, it is not unreasonable for Lovell to be required to appear before this Court in Ohio to defend himself against the claims made in the amended complaint.

Lovell's reliance on *Tri-State Judicial Services., Inc. v. Markowitz*, 624 F. Supp. 925 (E.D.N.Y. 1985), is misplaced, as there, the court held that it lacked personal jurisdiction over a defendant because the requirements of New York's long arm statute were not satisfied. *See id.* at 929. The Court expressly declined to rule on the due process issue. *See id.* Additionally, Lovell's contention that no injury resulted to Coast to Coast in Ohio because of his activities is similarly not well taken. As Coast to Coast is an Ohio corporation with its principal place of business in Ohio, the effect of Lovell's allegedly tortious behavior is undoubtedly felt in this state.

### 2. CAS

The amended complaint alleges that Lovell and Meyerhoffer surreptitiously organized CAS to compete with Coast to Coast, and that CAS, through Lovell and Meyerhoffer, is misappropriating Coast to Coast's trade secrets. (Am. Compl. ¶¶ 24, 84.) Coast to Coast also

alleges that CAS is an alter ego of Lovell. (*See* Am. Compl. ¶ 144.) As stated above, according to Bolton, on at least one occasion Lovell acted on behalf of CAS while traveling on Coast to Coast business. Lovell avers that he is a managing member of CAS. (Lovell Aff. ¶ 2.) He also states that Daybreak and Tapestry have no connection with CAS. (Lovell Aff. ¶¶ 5, 7.) Defendants' memorandum in support of their motion to dismiss contends that CAS was not formed until July 2010, approximately two months after Lovell resigned from Coast to Coast, has no clients in Ohio, and has never solicited clients in Ohio. (*See* Doc. 16 at 3, 6). These alleged facts are not supported by Lovell's affidavit, but Coast to Coast does not dispute them.

While CAS's contacts with Ohio are not as substantial as Lovell's, when the record before the Court is construed in Coast to Coast's favor, CAS's alleged tortious activity, through its agents Lovell and Meyerhoffer, suffices to establish the Court's personal jurisdiction over it. As stated in Part II.B.1 *supra*, Ohio's long arm statute permits Ohio courts to exercise personal jurisdiction over persons causing tortious injury within Ohio through acts committed outside the state. *See* Ohio Rev. Code § 2307.382(A)(6). Moreover, the required elements for satisfying due process are also present as to CAS. In this regard, CAS has purposefully availed itself of Ohio through its allegedly tortious activities. These activities have resulted in substantial, alleged consequences—injury to Coast to Coast—in Ohio, and the injuries claimed to be sustained are the result of active behavior on the part of CAS. Further, Coast to Coast's claims arise in part from CAS's activities, and the effects of CAS's activities in Ohio (the injury to Coast to Coast), render the Court's exercise of personal jurisdiction over CAS reasonable.

### 3. Daybreak and Tapestry

Turning to Daybreak and Tapestry, the Court concludes that it also has personal jurisdiction over those Defendants. While Daybreak and Tapestry have had no direct contact

with the state of Ohio, Coast to Coast posits that personal jurisdiction over them arises through their potential liability for the actions of CAS through veil piercing theories. The Court agrees.

It is proper for a court to obtain jurisdiction over a corporate defendant the court does not have personal jurisdiction over if that corporate defendant is the alter ego of a corporate body over which the court does have person jurisdiction. *Estate of Thomson v. Toyota Motor Corp.*, 545 F.3d 357, 362 (6th Cir. 2008). Having already determined that jurisdiction over CAS is proper, the Court next considers whether a veil piercing claim against CAS is supported by the pleadings and affidavits presently before the Court. In Ohio:

> the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owner's Ass'n v. R.E. Roark Cos.*, 617 N.E.2d 1075, 1086 (Ohio 1993). Ohio Courts have identified several factors relevant to a finding that the corporate veil should be pierced, including:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991). Still other factors identified by the Sixth Circuit include:

> (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation.

9

*Thomson*, 545 F.3d at 362–63.

The amended complaint alleges that Meyerhoffer and Lovell used the resources of Daybreak and Tapestry to staff and operate CAS. Coast to Coast further alleges that: 1) Daybreak and Tapestry are controlling CAS for their own benefit; 2) Lovell, Daybreak, and Tapestry exercise total control over CAS; 3) Daybreak, Tapestry, and CAS all have the same business address; 4) Lovell, Daybreak, and Tapestry intermingled their financial affairs with CAS; and 5) Lovell, Daybreak, and Tapestry used CAS to perpetrate the wrongs complained of in the amended complaint. (Am. Compl. ¶¶ 144–46.) According to Lovell, who is the treasurer of Daybreak and the CEO of Tapestry, those entities have no connection with CAS.

Construing the record in a light most favorable to Coast to Coast, the Court concludes that it has made a prima facie showing as to its veil piercing theory. The record reflects allegations of control and domination of CAS by Daybreak and Tapestry, wrongful acts against Coast to Coast by Daybreak and Tapestry acting through CAS, and injury to Coast to Coast as a result. Other factors supporting a veil piercing claim identified by Ohio courts and the Sixth Circuit are also present, including shared addresses, comingling of finances, and common use of resources. Accordingly, Coast to Coast has met its relatively slight burden of establishing personal jurisdiction at this stage of the litigation over Daybreak and Tapestry through their relationship with CAS. However, as the litigation progresses, the burden will remain on CAS to produce facts demonstrating the Court's personal jurisdiction over those and the other Defendants.

### III.

In the alternative to their motion to dismiss for lack of personal jurisdiction, Lovell, CAS, DayBreak, and Tapestry move for a transfer of venue to the Northern District of Georgia. In Part

IV *infra*, the Court grants Meyerhoffer leave to respond to the amended complaint. Meyerhoffer indicates that she will file her own motion to dismiss for lack of personal jurisdiction and/or improper venue. As Meyerhoffer's presence in the case will have some bearing on the motion to transfer venue, the Court will hold that motion in abeyance, pending Meyerhoffer's response to that motion.

### IV.

Also pending before the Court are Coast to Coast's motion for a default judgment against Meyerhoffer (Doc. 19) and Meyerhoffer's motion for leave to respond to the amended complaint (Doc. 21). This action was initially filed on August 13, 2010. Two weeks later, Coast to Coast amended the complaint. According to Coast to Coast, efforts to obtain a waiver of service from Meyerhoffer ultimately failed, and she was served with the amended complaint on October 15, 2010. (Stahley Dec. ¶ 11; *see also* Doc. 15.) Accordingly, pursuant to Rule 12(a)(1)(A)(i), Meyerhoffer was required to answer the complaint or file a responsive motion within twenty-one days, or on or before November 5, 2010. Meyerhoffer failed to do so, and Coast to Coast moved for a default judgment on November 12th. However, Meyerhoffer's motion for leave to respond to the complaint was filed that same day. Meyerhoffer represents that her failure to timely respond to the complaint was the result of a calendaring error on the part of her former attorney.

The Court grants Meyerhoffer's motion for leave to respond and denies Coast to Coast's motion for entry of a default judgment. Coast to Coast's motion for default judgment is denied because the motion was filed prematurely. Pursuant to Rule 55, prior to the entry of a default judgment, a party must first request the clerk to enter a default against the non-appearing party. *See* FED. R. CIV. P. 55(a); *Heard v. Caruso*, 351 F. App'x 1, 15–16 (6th Cir. 2009). In this case,

Coast to Coast failed to obtain the prerequisite entry of default against Meyerhoffer before moving for the entry of a default judgment.

Meyerhoffer's Motion for Leave to File a Responsive Pleading *Instanter* (Doc. 21) is made pursuant to Rule 6(b)(1), which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1). Thus, to prevail under Rule 6(b)(1), the moving party must establish both good cause and excusable neglect. Factors to be balanced in determining whether excusable neglect has been established include:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

"Judgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983). Accordingly, in this context, where the denial of a motion made pursuant to Rule 6(b) would possibly result in the entry of a default or default judgment, the excusable neglect standard must be colored by the policy of the federal courts favoring resolution of actions on their merits. *See Tolliver v. Liberty Mut. Fire Ins. Co.*, No. 2:06-cv-00904, 2008 WL 545018, at *1 (S.D. Ohio Feb. 25, 2008). Applying the requisite factors, the Court concludes that Meyerhoffer has demonstrated excusable neglect.

The first two factors somewhat overlap in this case, and the most compelling factor, especially given the policy disfavoring defaults, is the short length of the delay. Meyerhoffer

was only one week late in attempting to answer the amended complaint, and Coast to Coast has failed to demonstrate that it was prejudiced by the delay. In this regard, Coast to Coast has not suggested that its position in this lawsuit was somehow adversely affected during the one week period. As for the reason for delay, Meyerhoffer has represented that her former counsel failed to "docket" the deadline for filing her answer. A mistake or oversight of this type goes to the heart of the term "neglect." In interpreting the identical excusable neglect standard in the Federal Rules of Bankruptcy Procedure, the Supreme Court stated that:

> by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' [] Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

*Pioneer Inv. Servs.*, 507 U.S. at 388 (citation omitted). Finally, although it is clear that the delay was in the control of Meyerhoffer and her counsel, there is no indication that she acted in bad faith. This conclusion is again supported by the very short delay at issue. By all appearances, upon learning of the mistake, Meyerhoffer promptly obtained new counsel and moved for leave to respond to the amended complaint. The prompt nature of her response tends to negate any finding of bad faith.

Having concluded that Meyerhoffer has demonstrated good cause and excusable neglect pursuant to Rule 6(b), she will be permitted to respond to the amended complaint within ten (10) days of the date of this Order.

V.

For the foregoing reasons, the motion to dismiss of Defendants David Lovell, Critical Access Solutions, LLC, Daybreak Village, LLC, and Tapestry Hospice, LLC (Doc. 16) is **DENIED**. However, the Court will hold in abeyance those Defendants' motion to transfer venue

(Doc. 16). Plaintiff Coast to Coast Health Care Services, Inc.'s motion for default judgment against Defendant Dawn Meyerhoffer (Doc. 19) is **DENIED**. Meyerhoffer's motion for leave to file a responsive pleading instanter (Doc. 21) is **GRANTED**. Meyerhoffer shall have ten (10) days from the date of this Order to move or plead in response to the amended complaint and respond to the other Defendants' motion to transfer venue.

    **IT IS SO ORDERED.**

6-13-2011
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**