UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

COAST TO COAST HEALTH
CARE SERVICES, INC.,

        Plaintiff,

v.

DAWN MEYERHOFFER, et al.,

        Defendants.

Case No. 2:10-cv-734
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Dawn Meyerhoffer's

motion to dismiss for lack of personal jurisdiction, or, in the alternative, to change venue (Doc.

41) and Defendants David Lovell, Critical Access Solutions, LLC, Daybreak Village, LLC, and

Tapestry Hospice, LLC's motion to change venue (Doc. 16), which this Court previously held in

abeyance (Doc. 40). For the reasons stated herein, the Court **DENIES** Meyerhoffer's motion and

**DENIES** the remaining defendants' motion as it relates to changing venue.

### I.

Plaintiff Coast to Coast Health Care Services, Inc. ("Coast to Coast") brings the instant

action against Defendants David Lovell ("Lovell"), Critical Access Solutions, LLC ("CAS"),

Daybreak Village, LLC ("Daybreak"), Tapestry Hospice, LLC ("Tapestry"), and Dawn

Meyerhoffer ("Meyerhoffer") with claims for violations of the Ohio Trade Secrets Act, Ohio

Rev. Code § 1333.61 *et seq.*, conversion, unfair competition, breach of fiduciary duty, tortious

interference with business relations, unjust enrichment, accounting, constructive trust, violations

1

of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(c), and civil conspiracy.

Coast to Coast is an Ohio corporation with its principal place of business in New Albany, Ohio. (Am. Compl. ¶ 2.) Coast to Coast began doing business in 2007 and "specializes in providing high quality, experienced physician staffing for critical access hospitals, as well as offering a broad range of consulting services to critical access hospitals." *Id.* ¶¶ 2, 15. Coast to Coast alleges that Meyerhoffer, who resides in Utah, and Lovell, who resides in Georgia, are former key employees who have established CAS as a competing business, and, in so doing, have committed the various tortious and illegal acts alleged in the amended complaint.

CAS, Daybreak, and Tapestry are all Georgia limited liability companies. *Id.* ¶¶ 5-7. Lovell is the treasurer of Daybreak, an assisted living facility, and the chief executive officer of Tapestry, a hospice care provider. (Lovell Aff. ¶¶ 4-7.) Coast to Coast alleges that Lovell and Meyerhoffer have used the resources of Daybreak and Tapestry to staff and operate CAS, thus aiding their tortious conduct. (Am. Compl. ¶ 60.)

On November 1, 2010, Lovell, CAS, Daybreak, and Tapestry moved for dismissal of the claims against them based on a lack of personal jurisdiction, or, in the alternative, for a change of venue. (Doc. 16.) On June 13, 2011, this Court denied these defendants' motion as it related to personal jurisdiction, but held in abeyance the potion of the motion that requested a change of venue. (Doc. 40.) The Court anticipated Meyerhoffer's motion to dismiss for lack of jurisdiction, or, alternatively for a change of venue and indicated in its Opinion and Order that it would consider the venue issue at the time Meyerhoffer filed her motion. *Id.* at 10-11.

On June 23, 2011, Meyerhoffer filed her motion to dismiss for lack of personal jurisdiction, or, in the alternative, to change venue. (Doc. 41.) On July 18, 2011, Coast to Coast

2

filed its memorandum in opposition to Meyerhoffer's motion (Doc. 48), and on August 2, 2011 Meyerhoffer filer her reply in support of her motion (Doc. 51).

## II.

### A.

Meyerhoffer contends that, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, this Court lacks personal jurisdiction over her. A court may have either specific or general jurisdiction over a defendant. Specific jurisdiction is present "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). General jurisdiction, on the other hand, is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 415 n.9; *see also Burger King*, 471 U.S. at 473. To decide whether specific personal jurisdiction exists, the Court considers two factors: (1) whether Ohio's long-arm statute "authorize[s] the exercise of jurisdiction over [the] Defendants"; and (2) whether the "exercise of that jurisdiction comports with constitutional due process." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*; 503 F.3d 544, 550 (6th Cir. 2007).

The Sixth Circuit in *Southern Machine Co. v. Mohasco Indus., Inc.*, has established the following three-part analysis for evaluating due process in the context of specific personal jurisdiction challenges:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or

3

> consequences caused by the defendant must have a substantial enough connection
> with the forum state to make the exercise of jurisdiction over the defendant
> reasonable.

401 F.2d 374, 381 (6th Cir.1968). *See also Air Prods.*, 503 F.3d at 550; *Intera Corp. v.*

*Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

"[P]urposeful availment is something akin to a deliberate undertaking to do or cause an

act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime

generating cause of the effects resulting in [the forum state], something more than a passive

availment of [the forum state's] opportunities." *Bridgeport Music, Inc. v. Still N The Water*

*Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (internal quotations and citation omitted). Personal

jurisdiction is appropriate when a defendant purposely avails himself of the forum because the

defendant "manifestly has availed himself of the privilege of conducting business [in the forum],

and because his activities are shielded by the 'benefits and protections' of the forum's laws it is

presumptively not unreasonable to require him to submit to the burdens of litigation in that forum

as well." *Burger King*, 471 U.S. at 476. "If a plaintiff can demonstrate purposeful availment, the

absence of physical contacts with the forum state will not defeat personal jurisdiction over a

non-resident defendant." *Bridgeport Music*, 327 F.3d at 479.

The plaintiff bears the burden of establishing a court's personal jurisdiction over a

defendant. *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989). This

burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

In deciding whether personal jurisdiction over a defendant exists, it is within a court's discretion

to hold a hearing or rely on affidavits and the factual allegations of the pleadings without holding

a hearing. *Mich. Nat'l Bank*, 888 F.2d at 466. If a court chooses not to hold a hearing, it must

4

review the pleadings and affidavits in the light most favorable to the plaintiff, may not weigh contradictory evidence, *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), and the plaintiff need only make a *prima facie* showing of personal jurisdiction, *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Here, neither Coast to Coast nor Meyerhoffer have requested a hearing, and the Court is satisfied that the record before it, along with the allegations of the amended complaint and affidavits submitted by the parties, are sufficient to render a decision.

**B.**

The amended complaint alleges that Coast to Coast is an Ohio corporation with its offices in Ohio. Coast to Coast hired Meyherhoffer and negotiated her employment contract over the phone with her from Ohio. Meyerhoffer's employment position required her to schedule Coast to Coast's independent contractor provider physicians for the critical access hospital clients of Coast to Coast. Coast to Coast outfitted Meyerhoffer's desktop computer with its software, programming, and other tools she would need to carry out her employment. The amended complaint further alleges that before Lovell and Meyerhoffer resigned from Coast to Coast, they secretly conspired to start a competitor company and utilized Coast to Coast's national client lists, prospective client lists, and independent contractor physician provider lists and also began contacting clients of Coast to Coast.

Coast to Coast has also submitted an affidavit of its president, Mark J. Bolton, M.D., in support of its opposition to Defendants' motion to dismiss for lack of personal jurisidiction. In the affidavit, Dr. Bolton avers, *inter alia*, that Meyerhoffer was paid for work by Coast to Coast from Ohio and that during her employment she reported directly to Dr. Bolton "in Ohio, where

5

[he] ran the business of Coast to Coast." (Bolton Aff. ¶¶ 7, 8.)

In construing the record in the light most favorable to Coast to Coast, the Court concludes that Coast to Coast has met its relatively slight burden of making a *prima facie* showing that this Court has specific personal jurisdiction over Meyerhoffer. Turning first to Ohio's long arm statute, Ohio courts are deemed to have personal jurisdiction over a person "as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in" Ohio or from the person's "[c]ausing tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." Ohio Rev. Code § 2307.382(A)(3), (6). The amended complaint sufficiently alleges that Meyerhoffer committed tortious acts outside Ohio that caused injury within the state. Further, if Meyerhoffer secretly conspired to start a competitor company and utilized Coast to Coast's national client lists, prospective client lists, and independent contractor physician provider lists and also began contacting clients of Coast to Coast, she should have reasonably expected that Dr. Bolton's Ohio business would be damaged. Thus, the requirements of Ohio's long arm statute are satisfied.

Additionally, the requirements of due process would not be offended by the Court's exercise of personal jurisdiction over Meyerhoffer. With regard to the first element of the *Southern Machine* test, Meyerhoffer argues that she did not purposely avail herself to the privilege of acting in Ohio. *See Calphalon Corp.*, 228 F.3d at 721 ("The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction[.]"). As support for this argument, she posits that her residence is in Utah, she did not maintain any clients in Ohio, she personally never advertised services in Ohio, she never maintained a bank

6

account in Ohio, nor has she ever owned any property in Ohio. However, Meyerhoffer's lack of physical contacts with Ohio is not dispositive. The purposeful availment requirement is satisfied when a defendant avails herself "of the privilege of acting in the forum state *or* causing a consequence in the forum state." *Health Care Industries, Inc. v. Logan Park Care Center, Inc.*, 573 F. Supp. 360, 362 (S.D. Ohio 1983) (emphasis in original). A "consequence" in the forum state includes "effects on the 'general conduct of business' in Ohio which 'may not be readily quantifiable,' but are 'nonetheless real.'" *Id.* at 363. "If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music*, 327 F.3d at 479 (6th Cir. 2003) (citations omitted).

Indeed, the Sixth Circuit has held that "[i]f, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole*, 133 F.3d at 436 (citations omitted). Here, Meyerhoffer was employed by an Ohio based company and her actions allegedly caused tortious injury to Coast to Coast in Ohio. Her actions allegedly directly impacted Coast to Coast's economic and business interests. Meyerhoffer negotiated the terms of her employment contract via telephone with Coast to Coast, while it was located in Ohio (Meyerhoffer Aff. at ¶¶ 6-7, 12), which created a continuing obligation in Ohio.

Moreover, the Court has already found that Meyerhoffer's conduct demonstrated the purposeful availment of CAS to the jurisdiction of this Court. (Doc. 40 at 8) ("While CAS's contacts with Ohio are not as substantial as Lovell's, when the record before the Court is

7

construed in Coast to Coast's favor, CAS's alleged tortious activity, through its agents Lovell and Meyerhoffer, suffices to establish the Court's personal jurisdiction over it."). If Meyerhoffer's conduct demonstrates purposeful availment in her agency capacity, so too does it demonstrate purposeful availment in her individual capacity. *See Flynn v. Greg Anthony Constr.*, No. 01-3391, 2003 U.S. App. LEXIS 23024, at *42 (6th Cir. 2003) ("[The corporate agents] purposefully availed themselves of the forum state and because of this involvement they should be expected to submit to the jurisdiction of the forum state's courts regardless of their resident status."); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (finding that the district court erred in dismissing defendants based merely on the fact that they acted as agents for the corporation: "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim [against the corporation], the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposefully availed herself of the forum and reasonably foreseeable consequences of that availment.") (citations omitted).

Under the second prong of the *Southern Machine* test, the claim for relief against Meyerhoffer must arise out of Meyerhoffer's activities in Ohio. *See Southern Mach.*, 401 F.2d at 381 (referred to as the "arising from" element). A claim for relief can be of whatever type, as long as it has "a substantial connection with the defendant's in-state activities." *Id.* at 384 n.27. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Id.* at 384 n.29 (citations omitted). The Sixth Circuit has also stated that a "lenient standard . . . applies when evaluating the arising from criterion." *Bird v. Parsons*, 289 F.3d at 875.

This element is met in the instant action because the claims for relief alleged by Coast to Coast against Meyerhoffer are "related to [her] contact with the state" of Ohio. *Southern Mach.*, 401 F.2d at 384 n.29. Coast to Coast brought claims against Meyerhoffer alleging that she intentionally acted with the goal of causing injury within Ohio by, including among other things, double-booking contractor physicians to create scheduling errors for Coast to Coast, accessing Coast to Coast's SalesForce.com account and deleting critical and proprietary information contained therein, sending an open email in direct violation of Coast to Coast's instructions which advised Coast to Coast's clients and independent contractor physicians of her resignation, and taking steps, in concert with Lovell, to convert Coast to Coast's confidential information and usurp Coast to Coast's relationships with its clients in an effort to direct them to CAS. All of these alleged actions relate to her contact with Ohio, *i.e.*, her contact with her Ohio employer.

The final element under the *Southern Machine* test requires the Court to determine whether "the acts of [Meyerhoffer] or consequences caused by [Meyerhoffer] have a substantial enough connection with the forum state to make the exercise of jurisdiction over [her] reasonable." *Southern Mach.*, 401 F.2d at 381. This element exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Nationwide Mut. Ins. Co. v. Tamariz-Wallace*, No. C2-08-1148, 2009 U.S. Dist. LEXIS 51857, 2009 WL 1850612, at *5 (S.D. Ohio June 19, 2009) (citing *Burger King Corp. Corp.*, 471 U.S. at 477-78; *World-Wide Volkswagen Corp.*, 444 U.S. at 292). "'In considering whether the exercise of jurisdiction is reasonable, the court should consider, amongst others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the

9

plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.'" *Id.* (quoting *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 554-55 (6th Cir. 2007)).

The issue here presents a closer call than those presented in the analysis thus far. For being haled into court in Ohio would create a burden on Meyerhoffer, who avers in her affidavit that she accepted employment with Coast to Coast on the express condition that she be permitted to work entirely from her home in Utah and that she would not be required to go to Ohio. While an agreement that she would work in Utah is certainly not dispositive as to whether Meyerhoffer's acts or the consequences caused by her acts have a substantial enough connection with Ohio to make the exercise of jurisdiction over her reasonable, the Court does find it relevant as it relates to the concept of fair play and substantial justice. However, although the final inquiry turns on whether the forum state has an interest in resolving the conflict at issue, once the first two questions have been answered in the affirmative, as they have been here, "resolution of the third involves merely fettering out the unusual cases where that interest cannot be found." *Southern Mach.*, 401 F.2d at 384. Even where it would undoubtedly burden a defendant to defend itself from a foreign state, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003). As explained above, Meyerhoffer purposefully availed herself of Ohio and allegedly committed tortious injury to Coast to Coast, which it felt within Ohio. Further, Coast to Coast has an interest in obtaining relief in Ohio and Ohio certainly has an interest in providing a forum for one of its corporations. Therefore, this is not one of the "unusual cases" where it can be said that

Ohio does not have an interest in resolving this dispute.

Accordingly, when viewing the pleadings and affidavits in a light most favorable to Coast to Coast and foregoing weighing any controverting assertions, the Court concludes that Coast to Coast has met its relatively slight burden of making a *prima facie* showing that personal jurisdiction exists over Meyerhoffer.

## III.

All of the defendants in this action move to transfer[1] venue pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought." All of the defendants request that the Court transfer this action to the Northern District of Georgia except for Meyerhoffer, who requests transfer to Utah.

Under 28 U.S.C. § 1404, "[t]he party moving for transfer of venue generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight." *Mind-Peace, Inc. v. Pharmacon Int'l, Inc.*, No. 2:06cv632, 2006 U.S. Dist. LEXIS 71309, at \*5-\*6 (S.D. Ohio Oct. 2, 2006) (citing *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951)). In ruling on a Section 1404(a) motion, the Court need not limit itself to the statutory factors. *Clintonville Serv. Ctr. v. Monaco Coach Corp.*, No. 2:06 CV 295, 2007 U.S. Dist. LEXIS 23789, at \*26 (S.D. Ohio March 30, 2007) (citing *Jumara v. State Farm Ins. Co.*, 55

---

[1]Meyerhoffer also asks that the Court dismiss this action based on improper venue for the same reasons that the Court cannot exercise personal jurisdiction over her. (Meyerhoffer's Mot. to Dismiss at 7-8) ("Meyerhoffer's conduct is simply not enough to satisfy the due process requirements for personal jurisdiction. For the same reasons, the Court cannot find that a substantial part of the events or omissions giving rise to the claim occurred in Ohio within the meaning of 28 U.S.C. § 1391."). That argument, however, fails for the same reasons that the Court found it insufficient to defeat personal jurisdiction over Meyerhoffer.

F.3d 873, 878 (3d Cir.1995)). "Rather, a court should consider 'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Id.* at 879 (citing 15 Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters at § 3847 (2d ed. 1986)). While there are no set factors that the Court must examine, courts have generally examined a host of private and public factors protected by the language of Section 1404(a). *See id.* After considering the relevant factors, a transfer for convenience should not be ordered if the result is merely to shift the inconvenience from one party to another. 15 Wright & Miller, Federal Practice & Procedure: Jurisdiction and Related Matters at § 3848.

"The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Clintonville Serv. Ctr.*, No. 2:06 CV 295, 2007 U.S. Dist. LEXIS 23789, at *26-27 (internal citations omitted). In the instant action, the private interests weigh in favor of venue in the Southern District of Ohio. The factor given the most weight is Coast to Coast's choice, which is Ohio. Also, the defendants make no argument that witnesses may actually be unavailable for trial. And, while some of the documents at issue may be found in Georgia or Utah, "documents may easily be sent by mail, copied or even faxed to a remote location" and thus are a "minor consideration." *Picker Intern., Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 543 (N.D. Ohio 1998). Finally, the defendants make no argument to

12

support any other of the private interests.

As to the public interests, they have included the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* at \*27-28. These interests too, weigh in favor of Ohio as the appropriate forum. Defendants have made no argument that a judgment against them in Ohio would not be enforceable in Georgia or in Utah, that the trial judges in those jurisdictions would somehow be more familiar with the state law of Ohio than this Court, or that the dockets in those jurisdictions would provide a more expeditious resolution of this action. Nor have they made any arguments to support the other practical considerations the public factors. Contrarily, Coast to Coast has shown that Ohio has an interest in deciding a local controversy and determining the public policies of its own forum.

One final issue before the Court is Meyerhoffer's request that the Court transfer the case to Utah as it relates to her. As Coast to Coast correctly point out, however, 28 U.S.C. § 1404(a) only allows a court discretion to transfer a "civil action" to another judicial district where the case might have been brought. This Court does not have the authority or ability to parse or bifurcate this action, transferring some, but not all, of the case to Utah. *See In re Brand-Name Prescription Drugs Antitrust Litig.*, 264 F. Supp. 2d 1372, 1377 (J.P.M.L. 2003) ("After all, the plain language of section 1404(a) authorizes only the transfer of an entire action, not the transfer of individual claims within an action.") (citing, *inter alia, Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *see also In re: Flight Transport. Corp. Sec. Litig.*, 764 F.2d 515 (8th

13

Cir. 1985) (finding that § 1404(a) "contemplates a plenary transfer, and so far as we know a transfer for purposes of trial only is an animal unknown to the law"). Consequently, either the entire case must go to Utah, or none of it may go.

The Court finds that the defendants have not shown that for the convenience of the parties and witnesses, and in the interest of justice, this case should be transferred to Georgia or to Utah. Accordingly, the Court **DENIES** the defendants' requests to transfer venue.

### IV.

For the reasons stated herein, the Court **DENIES** Meyerhoffer's motion to dismiss for lack of personal jurisdiction, or, in the alternative, to change venue (Doc. 41) and **DENIES** the remaining defendants' motion to change venue (Doc. 16).

**IT IS SO ORDERED.**

_____
1-19-2012
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

14